**EXHIBIT A**



**South-Western City School District**

District Service Center
3805 Marlane Drive
Grove City, OH 43123
Phone: (614) 801-3000
Fax: (614) 871-2781

Via electronic mail only

December 29, 2023

Dr. Bill Wise, Superintendent of Schools
Dr. Jamie Lusher, Deputy Superintendent of Schools
South-Western City Schools
3805 Marlane Drive
Grove City, Ohio 43123
whw0312@swcsd.us
jjl1207@swcsd.us

    RE: Disciplinary Recommendation – Jenniffer Kauffeld

Dear Drs. Wise and Lusher:

The District concluded its investigation into allegations of misconduct that have been made against Jenniffer Kauffeld as Principal of Buckeye Woods Elementary School, issued a pre-disciplinary hearing notice to Ms. Kauffeld on December 12, 2023 and then held a pre-disciplinary hearing with Ms. Kauffeld on December 19, 2023. Ms. Kauffeld presented a written statement in lieu of providing verbal statements during the pre-disciplinary hearing and was accompanied by a SWAA representative.

The allegations against Principal Kauffeld arose from events occurring on and about November 14, 2023 involving a 5-year old female student in ▮▮▮▮▮▮▮▮ kindergarten class at Buckeye Woods ("the Student"). On that day, Ms. Kauffeld entered ▮▮▮▮▮▮▮▮' empty classroom at approximately 12:45 pm to discuss a matter involving the placement of another student in ▮▮ ▮▮▮▮ class. At that time, ▮▮▮▮▮▮▮▮ reported concerns regarding the Student's behaviors of rocking back and forth and scratching her genital area to Ms. Kauffeld that ▮▮▮▮▮▮▮▮ said could be a sign of sexual abuse. ▮▮▮▮▮▮▮▮ also told Principal Kauffeld that she had spoken with the Student's mother during school conferences several weeks earlier and asked for medical documentation concerning the health issue that mother had reported to ▮▮▮▮▮▮▮▮ when questioned about the behaviors then but that no such documentation had been forthcoming. ▮▮▮▮▮▮▮▮ also shared that School Counselor Russell had observed the Student in the classroom

1

earlier that day. Ms. Kauffeld asked ▮▮ whether she would like for her to observe the Student, and ▮▮ said yes.

Principal Kauffeld then spoke with School Counselor Russell about her earlier observation of the Student, and Ms. Russell stated that the Student was sitting on the edge of her chair rocking back and forth. Ms. Russell shared that she did not know the reason for the rocking but that it seemed like masturbation.

Principal Kauffeld returned to ▮▮' classroom at approximately 1:30-1:40 pm and sat approximately five feet from the Student to observe her. Ms. Kauffeld said that while in the classroom she observed the Student sitting on the front corner of her chair with her legs crossed rocking back and forth. She said that the Student had an abnormal expression on her face. She witnessed the student get up and get a pencil and then sit back down and use the pencil over her clothes to itch her genital area from the front. Principal Kauffeld described the Student's actions as "very aggressive" and said the student was not paying attention to the teacher or Ms. Kauffeld even though the Student was seated next to ▮▮ and Principal Kauffeld was five feet away.

Principal Kauffeld took the Student to her office at approximately 1:41 pm and had a brief conversation with her that included discussion of the chair and the pencil. During that conversation, the Student told Ms. Kauffeld that "it itches" all the time "during the day and at night" and had for some time and that the Student had told her mother. The Student denied ever seeing a doctor and said that "white stuff comes out" of her. Ms. Kauffeld's pre-disciplinary hearing statement provided additional information about their conversation, stating that Principal Kauffeld asked the Student whether the white stuff comes out of her "like when mommy puts medicine on you?" and that the Student replied "I don't use medicine, it just comes out of me." The statement also states that Principal Kauffeld told the Student she would like her "to talk to our nurse if she is here" and that the student said "ok." Principal Kauffeld sent the student back to the classroom at approximately 1:45 pm.

Principal Kauffeld promptly called School Nurse Deborah Dent and reported what she had learned. Ms. Kauffeld states that Nurse Dent said she could come over that day, despite Principal Kauffeld stating she told Nurse Dent "it is almost 2:00" and she does not have to do that. Principal Kauffeld said to Nurse Dent that she "does not know what to do." Nurse Dent's statements attribute the concern and urgency about the matter to Ms. Kauffeld and explain that she went to the school yet that afternoon because of Principal Kauffeld's stated concern and because she "is the nurse." Regardless, Principal Kauffeld understood that Nurse Dent was coming to the school yet that day. Nurse Dent arrived at Buckeye Woods Elementary shortly after the call ended.

Nurse Dent and Principal Kauffeld disagree on whether they had a conversation upon Ms. Dent's arrival at Buckeye Woods. However, it is uncontroverted that Principal Kauffeld did not instruct Nurse Dent to see her when she arrived at Buckeye Woods, the Student was brought to

2

the school's health clinic by Nurse Dent, and Principal Kauffeld and Nurse Dent were in the clinic room with the Student. In the clinic, Nurse Dent asked the Student questions about her genital area and whether she could "take a look." Principal Kauffeld's written statement says that Nurse Dent then pulled down the paper on the clinic cot and put on gloves, telling the Student it was "just in case she had an infection." The Student pulled her underwear and pants down below her hips, Ms. Dent performed a visual inspection of the Student's genital area, Ms. Dent told the student she did not see any white stuff, the Student and Nurse Dent pulled the student's pants up, and the student was sent back to class. Principal Kauffeld was in the room the entire time and in proximity to Nurse Dent and the student. She did not instruct or question Nurse Dent throughout the event or intervene in Nurse Dent's course of conduct. Ms. Kauffeld did not call the Student's parent.

After the Student left the clinic, Nurse Dent told Principal Kauffeld that she did not see any white stuff or bruising on the Student's genital area but that there was some pink, "probably from all the rubbing," according to Principal Kauffeld's written hearing statement. Principal Kauffeld says she then instructed Nurse Dent to call the Student's mother. Ms. Kauffeld did not know whether anyone called the mother prior to Ms. Dent doing the visual inspection nor did she ask Ms. Dent whether parental consent was given when she heard Ms. Dent ask the Student if she could take a look at her genital area.

Nurse Dent then called the Student's mother from the health clinic while Counselor Russell and Principal Kauffeld stood in the room. Principal Kauffeld could not hear mother's side of the conversation. Principal Kauffeld states that she overheard Ms. Dent talk with the Student's mother about what the Student said to her and had been doing, a gynecologist, and medical terms. Principal Kauffeld heard Ms. Dent ask the mother to send information to her from the Student's doctor.

The Student left school at the end of the school day, at approximately 2:30 pm, based upon her normal daily transportation mode. No one at the school asked that the Student be picked up from school early, nor was any emergency procedure initiated to prevent the Student from being transported home.

Principal Kauffeld did not make any report of suspected abuse or neglect to Children's Services or law enforcement concerning the Student. She denies having reason to do so.

Principal Kauffeld stated that she did not question Ms. Dent's visual inspection of the Student because she "thought Debbie knew what she was doing" and because she "thought it was a Nurse's opinion." She said that she refers all things medical to the School Nurse and that she has never been trained as to the practices that are in the "realm" of a School Nurses' duties or in regard to procedures school nurses should or should not conduct. Ms. Kauffeld had no opinion in regard to whether school officials, such as a school nurse, should be conducting such inspections. She reported that she had never witnessed such an inspection before, but said she

3

always refers medical issues to the School Nurse and rarely is involved with observing or following up with the School Nurse's actions or decisions. During an initial interview with the Investigator, when asked if she felt uncomfortable when she realized Ms. Dent was going to complete a visual inspection, Ms. Kauffeld said that she did feel uncomfortable but that she trusted Ms. Dent.

All staff, including Principal Kauffeld, are mandated to take Child Abuse and Neglect training through an online program called Public School Works. Ms. Kauffeld has taken this training multiple times. In the training it states that "Ohio law encourages everyone to report alleged child abuse and neglect. However, ORC 2151.421 legally requires some professionals to report known or suspected child abuse and neglect to a PCSA or law enforcement agency - even with no physical proof or other way to validate the abuse." It is also presented that "after a report is made a child protective services investigator, in cooperation with the local law enforcement agency, will interview the child, family members and others, as deemed appropriate."

Here, a visual inspection of the Student's genital area occurred with Principal Kauffeld present. The visual inspection occurred without parental notification or consent. There is no indication that a medical emergency existed. Ms. Kauffeld was aware that a discussion between ▮▮▮▮ and the parent had occurred during conferences, that ▮▮▮▮ was still awaiting medical documentation from the parent, and that the student continued to engage in the behaviors noted by ▮▮▮▮ over the past weeks. The evidence shows that the student's behaviors and potential health issues were not new.

Principal Kauffeld failed to stop Ms. Dent's actions and allowed the inspection to occur without knowing whether the parent was notified and or had given consent. Ms. Kauffeld made no inquiries to determine whether there was prior notification or consent. As building principal, Ms. Kauffeld is responsible for overseeing her school and what occurs in it, including directing the school nurse when they are in the building. Ms. Kauffeld was in the room when the visual inspection occurred. Ms. Kauffeld was not comfortable with the inspection but did not outwardly question or stop it. Ms. Kauffeld told Ms. Dent when she initially called her that she did not know what to do, but Ms. Kauffeld did not contact District administration or anyone else for guidance. Rather, Principal Kauffeld ceded her authority to Nurse Dent and failed to appropriately direct her.

Though another employee told Principal Kauffeld that they would be contacting Children Services the evening of November 14, 2023, Ms. Kauffeld did not contact Children's Services or otherwise report her concerns about the Student. Following the visual examination, the Student was returned to the classroom and went home at the end of the day as usual.

Principal Kauffeld observed the post-inspection call to Student's mother but did not separately reach out to the parent, either before or after the inspection occurred. She had no communication with mother whatsoever.

4

As stated in SWCSD policy 3210 it is expected that school employees practice with the highest ethical standards and maintain professional relationships with students at all times. It is expected that professionals will act to nurture the students and advocate for students' rights, including in areas of abuse or neglect. SWCSD Policy 3213 requires professional staff to maintain a standard of care for the supervision, control, and protection of students that is commensurate to their assigned duties and responsibilities, acting within the scope of their authority, and to report to Children's Services "any sign of suspected child abuse or neglect."

Principal Kauffeld violated Board policy and her professional responsibilities when she permitted the visual inspection of the Student's genital area and underwear to occur in the absence of an emergency or medical necessity and also without parental notification or consent. When Ms. Kauffeld facilitated the inspection, she did not maintain a professional boundary with the Student or act in accordance with Board policy. When Ms. Kauffeld did not call Children's Services and instead facilitated the visual inspection of the student's genital area, she again acted in violation of Board policy and failed to exercise an appropriate duty of care toward the Student. Principal Kauffeld did not reference suspected neglect by the mother, but she had information prior to the visual inspection of the student that provided a basis for reporting that. The occurrence of the visual inspection of the Student without parental consent, and without a medical justification or emergency, is also inconsistent with what is required of Board policy and training.

SWCSD Board Policy 5340.01 outlines that the role of the school nurse or other trained persons will be to be responsible for administering basic first aid, unless in the event of a medical emergency. In this situation it is identified that in the case of an emergency a student's parents will be contacted and instructions on the student's emergency card will be followed as the situation allows. It cannot be concluded that a medical emergency existed in this instance. Contact with Student's mother was not made on November 14, 2023 until after the visual examination was completed. Additionally, SWCSD Board Policy 5330 states that the Board of Education will not be responsible for the diagnosis and treatment of student illness. SWCSD Board Policy 5310 states specifically that "school health services must be limited to the prevention and detection of health problems, referral of problems through parents to the family physician or community health agencies and emergency care." It also provides that the building principal will be responsible for the administration of the health program in her school. Thus, Principal Kauffeld cannot disclaim responsibility for the actions of Nurse Dent or others in her building as it relates to interactions with the Student on November 14, 2023. While the actions of Principal Kauffeld were prompted by the student complaining of itching and white stuff coming out of her genitals and demonstrating discomfort in that area of her body, Principal Kauffeld did not state that she suspected the Student was in need of emergency medical care. The symptoms being reported by the Student, if true, would require actions that rise above basic first aid. Ms. Kauffeld has received training, and it is common knowledge in the District, that school district employees cannot investigate suspected abuse and neglect. A report must be

5

promptly made when suspected abuse or neglect has occurred or is threatened, which is required by Board Policies 3213 and 8462. Ms. Kauffeld did not make a report of abuse or neglect involving the student despite having sufficient concern to observe the Student, immediately question the Student, and promptly call the School Nurse to express her concern and tell her that she did not know what to do.

Principal Kauffeld violated Board policies 3210, 3213, 5310, 5330, 5340.01 and 8462, her job duties and training and her role as the principal of the building, and the requirements of her licensure and the professional standards articulated in the Licensure Code of Professional Conduct for Ohio Educators, all of which bear directly on her professional conduct and the services she provides students in the District, through each of the following:

1. Facilitating, failing to stop, and participating in the visual inspection of the Student's genital area;
2. Facilitating, failing to stop and participating in having a student disrobe for inspection of the student's genital area;
3. Failing to stop the School Nurse's actions and allowing the inspection to occur with knowledge that the parent was not notified and had not given consent;
4. Failing to notify the parent of the genital inspection or to get the parent's direct consent prior to the inspection;
5. Failing to notify Children's Services when she had reason to and suspected sexual abuse of a student;
6. Facilitating a visual inspection of the Student's genital area in the absence of a medical emergency or necessity;
7. Failing in her responsibility to oversee her building and what occurs in it, including directing the school nurse when she is in the building;
8. Being in the room for an inspection of the Student with which she was not comfortable and allowing it to occur anyways;
9. Failing to contact her supervisor or other district administrator when she did not "know what to do" for guidance in the situation;
10. Ceding her authority as building principal to the school nurse and not directing her;
11. Failing to separately reach out to the parent following the visual inspection of the Student to provide information;
12. Failing to practice the highest ethical standards and maintain a professional relationship with the Student and parent;
13. Failing to protect the Student by advocating for her rights;
14. Failing to maintain responsibility for the health program in her assigned building; and/or
15. Failing to abide by the training she has received from the District.

6

Considering these facts and violations, both singularly and collectively, I recommend that the District terminate Jenniffer Kauffeld's contract of employment and suspend her without pay or other fringe benefits pending the completion of statutory termination proceedings.

Respectfully,

*Dr. Susan Hayward* (signature)

Dr. Susan Hayward
Assistant Superintendent of Personnel

Recommendation Accepted:

_____     01/03/2024
Dr. Bill Wise                     Date

_____     1/3/24
Dr. Jamie Lusher                  Date

cc: Jenniffer Kauffeld (via email, regular mail, and certified mail)